UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BEULAH M. MOORE                              CIVIL ACTION

VERSUS                                       NO: 09-6470

METROPOLITAN HUMAN SERVICE DISTRICT           SECTION: R(2)


**ORDER AND REASONS**

Before the Court, is defendant Metropolitan Human Service District's motion to dismiss.[1] For the following reasons, the Court DENIES in part and GRANTS in part the motion.

I.  BACKGROUND

Plaintiff Beulah Moore is a social worker and ordained minister.[2] Defendant Metropolitan Human Service District, a Louisiana state agency, employed Moore at its Central City location to provide counseling for patients suffering from addictive disorders.[3] Moore also represented Metropolitan on the Crescent Alliance Recovery Effort (CARE), an interfaith organization formed in response to Hurricane Katrina.[4] Moore

---

[1] (R. Doc. 12.)

[2] (R. Doc. 27, ¶ 3, 4.)

[3] (R. Doc. 20.)

[4] (R. Doc. 1-1.)

1

served as a member of CARE's Spiritual Support Committee.[5]

Metropolitan provides support for patients suffering from addictive disorders and other mental health problems. Metropolitan offers a range of treatment options, including a 12-step behavioral modification program.[6] As part of this 12-step program, patients are asked to accept a "greater power," admit to the "greater power" the nature of their wrongs, and ask the "greater power" to remove their shortcomings.[7]

Moore asserts that between August 2006 and November 2006, she was verbally reprimanded for purportedly conducting Bible study sessions at work.[8] Although Moore denies having conducted Bible study sessions, she admits to providing Christian advice to patients who requested it, including patients referred to her by other social workers at Metropolitan and her supervisor, Barbara Pilson.[9] After allegedly receiving verbal reprimands, Moore sent an email to James Jones and A. James of the Louisiana Department of Health and Hospitals on September 1, 2006.[10] In the email, Moore requested a transfer to the St. Bernard Parish community

---

[5] (R. Doc. 1-1.)

[6] (R. Doc. 27.)

[7] (R. Doc. 27.)

[8] (R. Doc. 27.)

[9] (R. Doc. 20.)

[10] (R. Doc. 27.)

center.[11] Moore continued to answer patient questions regarding God, if asked to do so, while she awaited an answer to her transfer request.[12]

On November 21, 2006, Pilson and Sybil Wilson, Metropolitan managers, assert that they observed Moore "loudly discussing scripture."[13] After overhearing this, Wilson called Moore into her office and informed Moore that spiritual counseling was not part of the treatment process at Metropolitan and thus Moore should cease providing any religious guidance to Metropolitan's patients.[14] Moore alleges that Wilson "ordered her to cease and desist [from] any further mentioning of God in the facility."[15] At the meeting, Wilson allegedly addressed Moore in a degrading manner, and Moore allegedly responded to Wilson in kind.[16]

On November 22, Wilson sent Moore a letter memorializing their November 21 meeting.[17] The letter states that after the meeting, Moore walked to Pilson's office, "confronted her in a loud, angry and unprofessional manner," and screamed "all of you

---

[11]  (R. Doc. 27.)

[12]  (R. Doc. 20.)

[13]  (R. Doc. 1.)

[14]  (R. Doc. 1.)

[15]  (R. Doc. 27.)

[16]  (R. Doc. 20.)

[17]  (R. Doc. 12.)

3

go to hell."[18]  Wilson's letter further states that Moore should refer all patients requesting spiritual treatment to religious-based substance abuse programs in the community and "maintain professionalism at all times."[19]  Wilson's letter concludes by stating that if Moore's employment with Metropolitan is not satisfactory, "[Metropolitan] accept[s] resignations."[20]

The next day, on November 23, Moore responded to Wilson's letter.[21]  Moore's letter denies conducting Bible-based study groups or proselytizing in any way.[22]  She states that she did not solicit patients or ask any of them to bring a Bible to Metropolitan's clinic.  If a patient wanted to speak of God, Moore said that she gave them scripture references and encouraged them to attend church.[23]  At the end of the letter, Moore resigned from her position.[24]  She states that she "refuse to be discriminated against because I speak of God, mention Jesus and have given spiritual support to clients on their request."[25]

---

[18]   (R. Doc. 1, Wilson Letter.)

[19]   (R. Doc. 1, Wilson Letter.)

[20]   (R. Doc. 1, Wilson Letter.)

[21]   (R. Doc. 1, Moore Letter.)

[22]   *Id.*

[23]   *Id.*

[24]   *Id.*

[25]   *Id.*

On December 13, 2006, Moore filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).[26] On September 3, 2009, the EEOC issued to Moore a notice of right to sue within 90 days.[27]

Moore filed this suit on September 21, 2009.[28] Moore claims that Metropolitan discriminated against her in violation of Title VII of the Civil Rights Act of 1964 by prohibiting her from mentioning God at work and harassing her until she resigned from her job at Metropolitan.[29] Moore also sued under "related state law."[30] Metropolitan now moves to dismiss Moore's claims under Federal Rule of Civil Procedure 12(b)(6).[31]

**II. LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[32] A claim is facially plausible when the

---

[26] (R. Doc. 27.)

[27] *Id.*

[28] (R. Doc. 1.)

[29] (R. Doc. 27.)

[30] (R. Doc. 27.)

[31] (R. Doc. 12.)

[32] *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[33]  "A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.[34]  The court is not, however, bound to accept as true legal conclusions couched as factual allegations.[35]

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true.[36]  It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[37]  In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.[38]  If there are insufficient factual allegations to raise a right to relief above the speculative level,[39] or if it is apparent from the face of

---

[33]  *Iqbal*, 129 S.Ct. at 1949.

[34]  *Lormand v. U.S. Unwired, Inc.*, 565 F .3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[35]  *Iqbal*, 129 S.Ct. at 149-50.

[36]  *Id*.

[37]  *Twombly*, 550 U.S. at 555.

[38]  *Lormand*, 565 F.3d at 255-57.

[39]  *Twombly*, 550 U.S. at 555.

the complaint that there is an insuperable bar to relief,[40] the claim must be dismissed. In a motion to dismiss for a failure to state a claim under Rule 12(b)(6), the Court may not consider materials outside the pleadings.[41] Exhibits attached to a pleading, however, are part of the pleading.[42]

**III. DISCUSSION**

Title VII of the Civil Rights Act of 1964 provides in relevant part that "[i]t shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion."[43] A claim for religious discrimination under Title VII can be asserted under several different theories of liability, including disparate treatment, disparate impact, and failure to

---

[40] *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir. 2007).

[41] See Fed. R. Civ. Pro. 12(b); *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985)).

[42] *Neville v. American Republic Ins. Co.*, 912 F.2d 813, 814 n. 1 (5th Cir. 1990); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004)(not error to consider exhibits to be part of the complaint for purposes of a Rule 12(b)(6) motion).

[43] 42 U.S.C. § 2000e-2(a)(1).

accommodate.[44] In addition, Title VII's prohibition against religious discrimination covers separate claims against an employer for subjecting an employee to a hostile work environment–an environment that is motivated by animus based upon religion-or for retaliating against an employee who has opposed an unlawful employment practice.[45]

Moore alleges that Metropolitan discriminated against her on the basis of her religion.[46] Moore also alleges that the harassment she received at Metropolitan became so severe that she resigned as a result.[47] The Court liberally construes these allegations to assert a claim for direct religious discrimination under a failure to accommodate liability theory, as well as a separate hostile work environment claim.[48]

## A.  Direct Religious Discrimination

---

[44]  *See, e.g., Lee v. Conecuh County Bd. Of Ed.*, 634 F.2d 959 (5th Cir. 1981)(involving claims of disparate treatment; disparate impact.

[45]  *See, e.g., Ellis v. Principi*, 246 Fed. App'x. 867 (5th Cir. 2007)(hostile work environment); *Malouse v. Winter*, 338 Fed. App'x. 356 (5th Cir. 2009).

[46]  (R. Doc. 27.)

[47]  (R. Doc. 27.)

[48]  In her opposition brief, Moore cites to the legal standard for a Title VII religious discrimination claim articulated by the Fifth Circuit in *Jenkins v. State of La., Dept. of Corrections.* 874 F.2d 992, 995 (5th Cir. 1989). *Jenkins* addresses a claim under a "failure to accommodate" theory of liability. *Id.*

### *1. Pleading Standard*

A Title VII plaintiff bears the initial burden to prove a *prima facie* case of discrimination by a preponderance of the evidence.[49] "An employee proves a *prima facie* case of religious discrimination by showing that the employee: (1) has a bona fide religious belief that conflicts with an employment requirement; (2) informed the employer of this belief; and (3) was disciplined for failure to comply with the conflicting employment requirement."[50] Once the plaintiff establishes her *prima facie case*, the burden shifts to the defendant to show that it made a reasonable accommodation of the religious practice or show that accommodation was not possible without undue hardship.[51]

The *prima facie* case is an evidentiary standard, however, not a pleading requirement.[52] When a plaintiff presents direct evidence of discrimination, he can prevail without putting forward evidence showing each element of his *prima facie* case.[53] For this reason, in *Swierkiewicz v. Sorema N.A.*, the Supreme

---

[49] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973).

[50] *Jenkins v. State of La., Dept. of Corrections*, 874 F.2d 992, 995 (5th Cir. 1989)(citing *Turpen v. Missouri-Kansas-Texas R.R. Co.*, 736 F.2d 1022, 1026 (5th Cir. 1984).

[51] *See Turpen v. Missouri-Kansas-Texas R. Co.*, 736 F.2d 1022, 1026 (5th Cir. 1984).

[52] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).

[53] *Swierkiewicz*, 534 U.S. at 506.

Court held that a complaint alleging racial discrimination in violation of Title VII need not contain specific facts establishing a *prima facie* case of discrimination under the burden-shifting framework outlined in *McDonnell Douglas,* which applies to claims for discrimination based on circumstantial evidence.[54] The *Swierkiewicz* Court reasoned that a heightened pleading standard–one that required a plaintiff to plead facts in support of each element of the *prima facie* case--was not appropriate because the *McDonnell Douglas* framework did not apply in cases in which a plaintiff presents direct evidence of discrimination, and a plaintiff may not uncover such evidence until discovery.[55] In so doing, the Court followed the then-prevailing pleading standard set forth in *Conley v. Gibson*[56], which has since been repudiated by both *Twombly* and *Iqbal*.[57]

*Twombly* discusses *Swierkiewicz* in its text, but it does not overturn it.[58] Indeed, *Twombly* suggests that its analysis does

---

[54] *Id.*

[55] *Swierkiewicz*, 534 U.S. at 997.

[56] 355 U.S. 41, 47 (1957). *Conley* stated that a complaint, which must include "a short and plain statement of the claim showing that the pleader is entitled to relief," must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 47.

[57] *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

[58] *Twombly*, 550 U.S. at 547.

not run counter to *Swierkiewicz*.[59]  The Court thus interprets the current pleading standards for a Title VII case to reconcile *Swierkiewicz, Twombly, and Iqbal*.[60]  As a result, Moore need not plead facts establishing every element of her *prima facie* case to survive a motion to dismiss.  Moore must still, however, state a "plausible claim for relief" under the pleading standard set-forth in *Twombly* and *Iqbal*.[61]

### 2. *Pleading in This Case*

The Court finds that Moore has pleaded sufficient facts to state a plausible claim for direct religious discrimination.  Moore is an ordained minister who continued to answer religious questions posed to her by Metropolitan patients in the face of repeated reprimand.[62]  She claims that Metropolitan responded by telling her that she could not speak of God.  Finally, Moore claims that she was given an ultimatum to comply or resign.[63]

---

[59] *Twombly*, 550 U.S. at 569 (rejecting plaintiff's argument that majority opinion contradicts the holding of *Swierkiewicz*).

[60] See *also Barbosa v. Continuum Health Partners, Inc.*, 2010 WL 768888 (S.D.N.Y. 2010); *Kasten v. Ford Motor Co.*, 2009 WL 3628912 (E.D.Mich. 2009)(reading *Twombly* and *Swierkiewicz* together); *Harley v. Paulson*, 2008 WL 518931 (D.N.J. 2008).

[61] *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211-12 (3d. Cir. 2009).

[62] (R. Doc. 27.)

[63] An ultimatum can constitute an "adverse employment action" under Title VII.  *See Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 320 (5th Cir. 1997) Barrow *v. New Orleans S.S. Ass'n*,

11

Under Title VII an employer must "reasonably accommodate" an employee's religious beliefs, unless doing so would cause "undue hardship."[64] The determination of when the reasonable accommodation requirement has been met, and the circumstances under which a particular accommodation may cause undue hardship, must be made in the particular factual context of each case."[65] In this case, Metropolitan is both a state agency and Moore's employer.[66] These two roles--employer and sovereign-are often in tension.[67] The state's sovereign role constrains its ability to regulate an employee's speech, while the state's role as employer

---

10 F.3d 292, 297 (5th Cir. 1994)(constructive discharge the same as discharge); *Jenkins v. State of LA., Thru Dep't of Corrections*, 874 F.2d 992, 996 (5th Cir. 1989)(stating that constructive discharge can be proven with evidence that plaintiff-employee was given ultimatum). *See also DiIenno v. Goodwill Indus.*, 162 F.3d 235, 236 (3d Cir. 1998) (holding in context of retaliation claim that transfer could constitute adverse employment action).

[64] 42 U.S.C. § 2000(e)(j).

[65] *Mann v. Frank*, 795 F.Supp. 1438, 1450 (W.D.Mo. 1992)(*citing Anderson v. General Dynamics Convair Aerospace Div.*, 589 F.2d 397, 400 (9th Cir. 1978)). *See also Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977); *Redmond v. GAF Corp.*, 574 F.2d 897, 902-03 (7th Cir. 1978); *Williams v. Southern Union Gas Co.*, 529 F.2d 483, 489 (10th Cir. 1976).

[66] (R. Doc. 27.)

[67] *See, e.g., Daniels v. city of Arlington, Tex.*, 246 F.3d 500, 504 (5th Cir. 2001); Knight *v. Connecticut Department of Public Health*, 275 F.2d 156, 163-164 (2d Cir. 2001); *Wilson v. U.S. W.* Communications, 58 F.3d 1337, 1341-42 (8th Cir. 1995); *Brown v. Polk County, Iowa,* 61 F.3d 650, 659-60 (8th Cir. 1995); *Lumpkin v. Brown*, 109 F.3d 1498, 1500-01 (9th Cir. 1997); *Baz v. Walters*, 782 F.2d 701, 708 (7th Cir. 1986).

12

allows it some leeway to do so when an employee's speech threatens to undermine the state's ability to efficiently perform its public services.[68] This is especially true when the state seeks to avoid an Establishment Clause violation.[69] For example, in *Knight v. Connecticut Dept. Of Public Health*, the Second Circuit addressed the question of whether the state provided reasonable accommodation to two state employees under Title VII.[70] One state employee was a sign language interpreter and the other a nurse consultant.[71] The state had prohibited each employee from promoting religious messages while working with clients on state business.[72] The Second Circuit stated that permitting a public employee to "evangelize" while working with

---

[68] See *Daniels v. city of Arlington, Tex.*, 246 F.3d 500, 504 (5th Cir. 2001)(discussing *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) test for speech by public employees); *Lumpkin v. Brown*, 109 F.3d 1498, 1500-01 (9th Cir. 1997)(same). *Cf., Waters v. Churchill*, 511 U.S. 661, 675-77 (1994) (plurality opinion) ("The government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as a sovereign to a significant one when it acts as an employer.").

[69] See *Knight*, 275 F.3d at 165 (citing *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394 (1993)). "The Establishment Clause . . . prohibits government from appearing to take a position on questions of religious belief . . .." *County of Allegheny v. Am. Civil Liberties Union*, 492 U.S. 573, 593-94 (1989).

[70] *Knight*, 275 F.3d at 165.

[71] *Id.* at 161-62.

[72] *Id.*

clients on state business would "jeopardize the state's ability to provide services in a religion-neutral manner."[73] Even so, the Court found that the state had provided reasonable accommodation because the prohibition on religious speech occurred only while each state employee was working with clients on state business.[74] The Court found no evidence the state employees "religious activities were curtailed other than when visiting with clients."[75] Similarly, in *Brown v. Polk County, Iowa*, the Eighth Circuit rejected the argument that the state could prohibit religious expression altogether in the workplace to "avoid[] a claim against them that they have violated the establishment clause."[76]

The Court finds that Metropolitan's argument that its conduct was appropriate because it prohibited Bible-based study at a state facility misses the point. Moore alleges that Metropolitan said she could not mention God at work.[77] The *Knight* and *Brown* cases each support the principle that a state employer may restrict the religious speech of its employees, but

---

[73] *Id.* at 168.

[74] *Id.*

[75] *Id.*

[76] *Brown v. Polk County*, *Iowa,* 61 F.3d 650, 659-60 (8th Cir. 1995).

[77] (R. Doc. 27.)

the state must not do so in an unconditional manner.  If Moore's allegation is true-and the Court must assume that it is at this stage of the proceedings-a reasonable inference to draw is that Metropolitan prohibited Moore from mentioning God even when she was not speaking with Metropolitan clients.  Such an unconditional prohibition could run afoul of Metropolitan's duty to reasonably accommodate Moore's religious beliefs.  Moore's direct religious discrimination claim therefore survives Metropolitan's motion to dismiss.

**B.  Hostile Work Environment**

Courts have long recognized that Title VII "is not limited to 'economic' or 'tangible' discrimination," such as discrimination in hiring and compensation.[78]  Title VII is also violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[79]  The Supreme Court has distinguished between cases in which a hostile work environment is created by the plaintiff's co-workers and cases in which the hostile work environment is created by the plaintiff's

---

[78]  *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986).

[79]  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted).

supervisor.[80]  When co-workers are to blame, the employer can be held liable only if it "knew or should have known of the harassment and failed to take prompt remedial action."[81]  By contrast, when the plaintiff's supervisor is responsible, the employer can be held vicariously liable for the supervisor's actions without any showing that the employer was personally negligent.[82]

Moore alleges that Metropolitan harassed her because of her religion and that this harassment caused her to resign from her job at Metropolitan.[83]  To establish a hostile work environment claim under Title VII, a plaintiff must demonstrate that: (1) she is a member of a protected group; (2) she was the victim of uninvited harassment; (3) the harassment was based on religion; and (4) the harassment affected a term, condition, or privilege of her employment.[84]  A hostile work environment is one

---

[80]  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 479 n.4 (5th Cir. 2008).

[81]  *Harvill v. Westward Communications, LLC*, 433 F.3d 428, 434 (5th Cir. 2005).

[82]  *See Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

[83]  (R. Doc. 27.)

[84]  *Harvill v. Westward Communications, LLC*, 433 F.3d 428, 434 (5th Cir. 2005).  *See also Abramson v. William Paterson College of New Abramson v. William Paterson College of New Jersey,* 260 F.3d 265 (3d Cir. 2001)(hostile work environment

"permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[85] To be actionable, the challenged conduct must be objectively offensive, meaning that a reasonable person would find it hostile and abusive.[86] Whether an environment is hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance.[87]

The Court finds that Moore has not stated a plausible hostile work environment claim. Moore's amended complaint alleges only that Metropolitan "harass[ed Moore] to the point of

---

claim based on religion); *Hafford v. Seidner*, 183 F.2d 506, 514 (6th Cir. 1999)(same). An affirmative defense is available to employers in certain circumstances provided that the supervisor's harassment did not culminate with any "tangible employment action" against the employee. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).

[85] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)(internal quotes omitted).

[86] *Harvill*, 433 F.3d at 444 (quoting *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999)).

[87] *Septimus v. University of Houston*, 399 F.3d 601, 611 (5th Cir.2005).

causing her to resign."[88] This statement by itself, however, is nothing more than a legal conclusion couched as a factual allegation. Moore does not specify any particularly "hostile" comments, let alone any comments that were "based on" her religion and affected a term or condition of her employment.[89] At most, Moore alleges that Metropolitan "verbally reprimanded" her "several" times.[90] Yet, Moore does not give content to the alleged reprimands. Nor does Moore state that the reprimands dealt with her Christian faith. The term "reprimand" connotes a formal directed rebuke of a specific practice[91], not an objectively offensive and derogatory insult that might foster a hostile and abusive working environment. Equally telling is the fact that Moore's opposition brief does not argue that Moore was subject to a hostile work environment at Metropolitan.[92]

---

[88] (R. Doc. 27.)

[89] *See, e.g., Hafford v. Seidner*, 185 F.3d 506 (6th Cir. 1999)(dismissing hostile work environment claim because specified comments did not meet standard that "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'")(quoting *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)).

[90] (R. Doc. 27.)

[91] The American Heritage Dictionary of the English Language defines "reprimand" as "a severe, formal, or official rebuke or censure." American Heritage Dictionary of the English Language (4th Ed. 2000).

[92] (R. Doc. 20.)

Instead, Moore defends only her direct religious discrimination claim.[93] The Court therefore GRANTS Metropolitan's motion to dismiss Moore's hostile work environment claim.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES in part and GRANTS in part defendant Metropolitan Human Service District's motion to dismiss.[94]

It is so ordered.

New Orleans, Louisiana, this 7th day of April, 2010.

_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

---

[93] *Id.*

[94] (R. Doc. 12.)