UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BEULAH MOORE                              CIVIL ACTION

VERSUS                                    NO: 09-6470

METROPOLITAN HUMAN SERVICE DISTRICT       SECTION: R(2)


**ORDER AND REASONS**

In this Title VII religious discrimination case, defendant
Metropolitan Human Service District moves for summary judgment on
Beulah Moore's religious discrimination claim.[1]  Moore has not
opposed the motion.  Because Metropolitan did not generally
restrict Moore's religious speech or activities during work
hours, but imposed restrictions only on Moore's interactions with
clients in providing state-sponsored services, the Court GRANTS
the motion.


**I.    BACKGROUND**

Plaintiff Beulah Moore is a social worker and ordained
minister.  Defendant Metropolitan Human Service District, a
Louisiana state agency, employed Moore at its Central City
location to provide counseling for patients suffering from
addictive disorders.

---

[1]     R. Doc. 34.

1

Moore's claim arises out of an incident that took place on November 21, 2006.  Moore alleges in her complaint that relevant incidents also took place before that date,[2] but Moore states in her deposition that the incident that forms the basis of her claim took place on that one day.[3]  On November 21, 2006, Sybil Wilson, the clinic manager at Metropolitan's Central City location, observed Moore in a therapy session with Metropolitan clients.[4]  Wilson asserts, and Moore does not dispute, that Moore discussed the Bible with those clients during that session.[5] Wilson then met with Moore later that day.  During that meeting, Wilson instructed Moore not to provide "spiritual based counseling/treatment to Metropolitan clients."[6]  Moore alleges in the complaint that Wilson also "ordered her to cease and desist any further mentioning of God in the facility,"[7] but this allegation is not supported by any evidence in the record.  In her affidavit, Wilson specifically denies ordering Moore to cease mentioning God at all in the facility.[8]

---

[2]   R. Doc. 27, ¶7.

[3]   R. Doc. 34-4 at 50-58.

[4]   R. Doc. 34-5, Affidavit of Sybil Wilson.

[5]   *Id.*; R. Doc. 34-4 at 50-58.

[6]   R. Doc. 34-5, Affidavit of Sybil Wilson, ¶7.

[7]   R. Doc. 27.

[8]   R. Doc. 34-5, Affidavit of Sybil Wilson, ¶6.

On November 22, 2006, Wilson wrote a letter to Moore memorializing the meeting that had taken place the previous day.[9] In the letter, Wilson states that she and Barbara Pilson, Moore's supervisor, had observed Moore "loudly discussing scripture" and "conducting a bible study group."  The letter states that "spiritual counseling/treatment, prayer and etc. are not a part of Metropolitan Human Services District's clinical treatment process" and that Moore must "cease from providing that type of treatment immediately."  Wilson's letter further states that Moore should refer all patients requesting spiritual treatment to faith-based substance abuse programs in the community.  The letter also states that Moore had angrily confronted Barbara Pilson after the meeting between Moore and Wilson the previous day.  The letter instructs Moore to "maintain professionalism at all times."  Wilson's letter concludes by stating that if Moore's employment with Metropolitan is not satisfactory, "[Metropolitan] accept[s] resignations."

Moore wrote a letter in response to Wilson the next day, on November 23.[10]  In the letter, Moore denies proselytizing or soliciting staff or clients for Bible study groups, but she admits that she "facilitated a Spirituality Group/Session with clients who request this service."  The letter also states: "I

---

[9]    R. Doc. 34-5, Wilson Letter.

[10]   R. Doc. 34-5, Moore Letter.

refuse to be harassed and discriminated against because I speak of God, mention Jesus and have given Spiritual Support to clients on their request." At the end of the letter, Moore resigned from her position.

On December 13, 2006, Moore filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).[11] On September 3, 2009, the EEOC issued to Moore a notice of her right to sue within 90 days.[12]

Moore filed then this suit on September 21, 2009.[13] Moore claims that Metropolitan discriminated against her in violation of Title VII of the Civil Rights Act of 1964 by prohibiting her from mentioning God at work and harassing her until she resigned from her job at Metropolitan.[14] Moore also makes claims under state law.[15] On April 8, 2010, the Court granted in part and denied in part Metropolitan's motion to dismiss.[16] The Court dismissed Moore's hostile work environment claim but found that Moore stated a claim for direct religious discrimination under a failure to accommodate theory. Metropolitan now moves for

---

[11]   R. Doc. 34-5, EEOC Charge.

[12]   R. Doc. 1, EEOC Dismissal.

[13]   R. Doc. 1.

[14]   R. Doc. 27.

[15]   *Id*.

[16]   R. Doc. 32.

summary judgment on Moore's direct religious discrimination claim.  As noted, Moore does not oppose the motion.

## II.  STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed

verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith for and on Behalf of Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).


**III. DISCUSSION**

At issue is Moore's direct religious discrimination claim under Title VII.  The Court previously held that Moore has stated

a claim for direct religious discrimination because of her allegation that she was generally prohibited from mentioning God at work.[17]  The Court held: "Such an unconditional prohibition could fun afoul of Metropolitan's duty to reasonably accommodate Moore's religious beliefs."[18]  In its motion for summary judgment, Metropolitan contends that it prohibited Moore only from conducting faith-based treatment of Metropolitan clients and did not restrict her religious conversations or activities outside the therapy process.  Metropolitan also argues that allowing Moore to use religion in treating its clients would raise concerns under the Establishment Clause of the First Amendment.

Moore does not bring a claim under the Free Exercise Clause of the First Amendment.  Rather, she brings her claim under Title VII of the Civil Rights Act of 1964, which provides in relevant part that "[i]t shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion."  42 U.S.C. § 2000e-2(a)(1).  An employer must reasonably accommodate an employee's religion unless doing so would constitute an undue

---

[17]    *Moore v. Metropolitan Human Service Dist.*, No. 09-6470, 2010 WL 1462224 (E.D.La. Apr. 8, 2010) (R. Doc. 32).

[18]    *Id.* at *4.

hardship.  42 U.S.C. § 2000e(j).  A Title VII plaintiff bears the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973).  "An employee proves a *prima facie* case of religious discrimination by showing that the employee: (1) has a bona fide religious belief that conflicts with an employment requirement; (2) informed the employer of this belief; and (3) was disciplined for failure to comply with the conflicting employment requirement."  *Jenkins v. State of La., Dept. of Corrections*, 874 F.2d 992, 995 (5th Cir. 1989)(citing *Turpen v. Missouri-Kansas-Texas R.R. Co.*, 736 F.2d 1022, 1026 (5th Cir. 1984).  Once the plaintiff establishes her *prima facie* case, the burden shifts to the defendant to show that it made a reasonable accommodation of the religious practice or that accommodation was not possible without undue hardship.  *See Turpen v. Missouri-Kansas-Texas R. Co.*, 736 F.2d 1022, 1026 (5th Cir. 1984).  Undue hardship exists when an employer would be required to bear more than a *de minimis* cost.  *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977); *Brener v. Diagnostic Center Hospital*, 671 F.2d 141, 146 (5th Cir. 1982).

Metropolitan has not challenged plaintiff's *prima facie* case of religious discrimination.  Rather, it argues that accommodating Moore by allowing her to conduct Bible-based treatment of its clients would raise concerns under the

8

Establishment Clause and would thus constitute an undue hardship.

Whether the reasonable accommodation requirement has been met, and whether an accommodation would cause undue hardship, must be determined in the particular factual context of each case. *Mann v. Frank*, 795 F.Supp. 1438, 1450 (W.D.Mo. 1992) (citing *Anderson v. General Dynamics Convair Aerospace Div.*, 589 F.2d 397, 400 (9th Cir. 1978)). In this case, Metropolitan is both a state agency and Moore's employer.[19] The state's sovereign role constrains its ability to regulate an employee's speech, but its role as employer gives it some leeway to impose limitations when an employee's speech threatens to undermine the state's ability to perform public services. *See, e.g., Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 504 (5th Cir. 2001) (discussing *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) test for speech by public employees and ruling that state could prohibit police officer from pinning cross to uniform). In some circumstances, a state may impose speech limitations when it seeks to avoid an Establishment Clause violation. *See Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394 (1993) (quoting *Widmar v. Vincent*, 454 U.S. 263, 271 (1981)) ("the interest of the State in avoiding an Establishment Clause violation may be [a] compelling one justifying an abridgment of free speech otherwise protected by the First Amendment."); *County*

---

[19]    R. Doc. 27.

*of Allegheny v. Am. Civil Liberties Union*, 492 U.S. 573, 593-94 (1989) ("The Establishment Clause . . . prohibits government from appearing to take a position on questions of religious belief. . .").

The Court's review of the relevant case law reveals that Metropolitan's instructions to Moore did not violate Title VII. Although a state employer may not restrict the religious speech of its employees in an unconditional manner, it may limit religious speech in particular circumstances, such as in employees' interactions with clients, in order to avoid the undue hardship of a potential Establishment Clause violation.  For example, in *Knight v. Connecticut Dept. of Public Health*, 275 F.3d 156 (2nd Cir. 2001), the Second Circuit addressed the question of whether the state reasonably accommodated two of its employees under Title VII.  *Id*. at 165.  One employee was a sign language interpreter, and the other was a nurse consultant.  The state had prohibited both employees from promoting religious messages while working with clients on state business.  The Second Circuit found that the state had reasonably accommodated the employees by limiting only their interactions with clients. *Id*. at 168.  There was no evidence that the employees' "religious activities were curtailed other than when visiting with clients." *Id*.  Further, the court held that permitting a public employee to "evangelize" while working with clients on state business would

10

impose an undue hardship because it would "jeopardize the state's ability to provide services in a religion-neutral manner." *Id.* The court concluded that the state was not required to accept that burden, and the restrictions the state imposed on its employees did not violate Title VII. *Id.*

Other courts have also made the distinction between employees' religious speech in general, which a state employer may not categorically prohibit, and religious speech in dealing with clients, which a state employer may restrict. In *Berry v. Department of Social Services*, 447 F.3d 642 (9th Cir. 2006), for instance, the Ninth Circuit held that the state could limit an employee's religious discussions with clients. Such discussions ran "a real danger" of entangling the state with religion. *Id.* at 651. Because this entanglement would risk violating the Establishment Clause, requiring the state to allow its employee to engage in religious discussions with clients would impose an undue hardship under Title VII. *Id.* at 655.

By contrast, in *Brown v. Polk County, Iowa,* 61 F.3d 650, 658-59 (8th Cir. 1995), the Eighth Circuit held that the Establishment Clause did not justify the state's prohibition of religious expression in the workplace altogether. In that case, a state employee's dismissal was based in part on the employee's "occasional spontaneous prayers and isolated references to Christian belief." *Id.* at 657. The Eighth Circuit held that

allowing such activities would not cause the state any undue
hardship. *Id.* It also found that the Establishment Clause did
not justify a general ban on workplace speech that "could be
considered" religious. *Id.* at 658-59. The employee's dismissal
thus violated Title VII, as well as the Free Exercise Clause.
*Id.* at 657-59.

The present case does not involve a general ban on religious
speech in the workplace, as in *Brown*. Rather, this case is much
closer to *Knight* and *Berry*. In this case, Metropolitan has
submitted evidence challenging Moore's allegation that she was
instructed not to mention God at all while at work. Moore has
not responded to this evidence. The undisputed facts are that
Sybil Wilson observed Moore conducting Bible-based treatment of a
client and instructed Moore to cease providing such treatment,
but that Moore refused. There is no evidence on the record that
Moore was generally instructed not talk about God or religion at
work. In her affidavit, Sybil Wilson states that she did not,
either in person or by letter, prohibit Moore from mentioning God
at all in the facility.[20] Rather, Wilson asserts that she
restricted Moore from providing "spiritual based
counseling/treatment to Metropolitan clients."[21] Wilson's letter

---

[20]    R. Doc. 34-5, Affidavit of Sybil Wilson.

[21]    *Id.*

to Moore is entirely consistent with her affidavit.[22]  Further, Moore's letter in response to Wilson does not state that Moore was generally prohibited from mentioning God, but rather discusses the "Spirituality Group/Session" that she "facilitated" with clients.[23]  Other than her interactions with clients in providing state-sponsored services, Moore never raises any instances in which she was not allowed to speak of religion.

Metropolitan did not generally restrict Moore's religious speech and activities in the workplace.  By imposing restrictions only on Moore's faith-based treatment of clients, Metropolitan avoided the undue hardship of a potential Establishment Clause violation.  Moore has provided no evidence that Metropolitan limited her religious speech or activities in any other context. Thus, the Court grants summary judgment to Metropolitan on Moore's direct religious discrimination claim.

To the extent that Moore also asserts state law claims, the Court declines to exercise supplemental jurisdiction over those claims under 28 U.S.C. § 1367(c)(3).  *See Holland v. GEXA Corp.*, 161 Fed.Appx. 364, 366 (5th Cir. 2005) (general rule is to dismiss pendant state claims when federal claims are dismissed).


## IV.  CONCLUSION

---

[22]     R. Doc. 34-5, Wilson Letter.

[23]     R. Doc. 34-5, Moore letter.

13

For the foregoing reasons, the Court GRANTS defendant Metropolitan Human Service District's motion for summary judgment and DISMISSES Moore's complaint.

New Orleans, Louisiana, this __8th__ day of October, 2010.

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

14